Filed 11/7/25  Saucedo v. County of Humboldt CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JESUS SAUCEDO,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF HUMBOLDT.<br><br>     Defendant and Respondent. | A172746<br><br><br>(Humboldt County<br>Super. Ct. No. CV2400105) |

This dispute arises from the termination of Jesus Saucedo's employment as an office assistant for the County of Humboldt (the County). The trial court sustained the County's demurrer to Saucedo's third amended complaint (complaint) without leave to amend.  We reverse.

## BACKGROUND

The County hired Saucedo to work as an Office Assistant I in its Department of Health and Human Services in July 2015.  An August 1990 description of the position, which she attached as an exhibit to the complaint, listed a number of "[i]llustrative" duties of Office Assistants I and II, including acting as a receptionist, receiving and screening visitors and telephone calls, taking messages, providing information regarding County activities, typing correspondence, preparing reports and meeting materials, proofreading materials, entering data, maintaining records, processing forms, and taking notes for meetings, among others.  The description further stated

that specific duties of the Office Assistant II position, including "contact with the public," would "vary with the organizational unit to which assigned." A July 2003 description, also attached as an exhibit to the complaint, similarly set forth a long list of examples of typical duties an office assistant "may" have to perform, such as assisting the public in person or by phone, answering inquiries related to department services, scheduling appointments, researching information, processing mail, and maintaining records and files.

Shortly after Saucedo was hired, the County asked her to attend and take minutes at meetings on a couple of occasions. Saucedo did not feel adequately trained for this task and experienced anxiety and panic attack symptoms as a result. Saucedo saw her doctor, who issued a note stating that Saucedo was experiencing symptoms of anxiety that were triggered by taking meeting minutes. Saucedo's medical provider requested that Saucedo be excused from taking meeting minutes, and the County accommodated this request.

Saucedo worked from 2015 to 2019 with this accommodation and, in July 2016, was promoted from Office Assistant I to Office Assistant II. However, her anxiety symptoms were triggered once again in 2019 when the County transferred her to another physical location and required her to make scripted telephone calls to clients. In response, the County allowed Saucedo to work with clients by mail only from May to August 2019.

During this time, Saucedo's supervisor told her that her situation had been discussed with the department's Program Manager but the Program Manager believed Saucedo was " 'faking her symptoms.' " Saucedo's supervisor suggested that Saucedo obtain a note from her medical provider. Around June 2019, Saucedo's doctor sent a letter asking that Saucedo's work

2

duties be modified to not include interaction with the public by phone or in person until further notice.

At some point thereafter, Saucedo's Program Manager told Saucedo that the County was shifting to a new business model that required office assistants to have contact with the public. Around August 2019, a County employee services representative and a human resources representative informed Saucedo that it might be possible to transfer her to a location where she would not have to make phone calls. The County initiated the interactive process to discuss reasonable accommodations that could enable Saucedo to safely perform the essential functions of her position, sending a supplemental medical questionnaire to Saucedo's medical provider in November 2019 to obtain information regarding proposed work restrictions, among other things. In response, Saucedo's medical provider indicated that Saucedo would need to limit her in person and phone interactions with the public, and these restrictions were permanent.

In December 2019, the County informed Saucedo that she could not continue to work unless she did so without an accommodation. The County subsequently placed Saucedo on forced medical leave. Saucedo's employment was later terminated on December 10, 2021.

Saucedo filed a discrimination complaint with the California Department of Fair Employment and Housing (FEHA), and received a notice of right to sue. Saucedo then filed the present action. After two rounds of demurrers, Saucedo filed the operative complaint, which alleges a single cause of action for wrongful termination based on disability discrimination under FEHA. The County demurred again, arguing that Saucedo failed to state a claim because she did not plead that she was able to perform the

3

essential functions of her position even with reasonable accommodation or that the County had a discriminatory intent.

The trial court sustained the demurrer without leave to amend. The court did not explain the basis for its decision beyond stating that it had considered the parties' papers and their oral arguments.

## DISCUSSION

On a demurrer, the court's function is limited to testing the legal sufficiency of the complaint. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113.) A demurrer is not the appropriate vehicle for determining the truth of disputed facts. (*Id.* at pp. 113–114.) We review an order sustaining a demurrer de novo, assuming well-pleaded factual allegations to be true and examining the complaint to determine if it alleges facts sufficient to state a cause of action on any legal theory. (*Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1336.) "We may also look to exhibits attached to the complaint for operative facts." (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 596–597.)

To allege a claim for disability discrimination under FEHA, a plaintiff must plead that (1) he or she suffers from a disability, (2) was otherwise qualified to do the job, (3) suffered an adverse employment action, and (4) the employer harbored discriminatory intent. (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1246.) An employee is otherwise qualified to do his or her job if he or she is able to perform the essential functions of the job, with or without reasonable accommodation. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 378; Gov. Code, § 12940, subd. (a)(1)[1] [FEHA does not prohibit discharging an employee based on a disability if that

---

[1] All undesignated statutory references are to the Government Code.

employee is unable to safely perform his or her essential duties even with reasonable accommodation].)

Saucedo argues that her complaint adequately alleged each element. As it did in its demurrer, the County maintains that Saucedo's allegations do not satisfy the second and fourth elements—i.e., that she was able to perform the essential functions of her job, and that the County harbored discriminatory intent. We consider these elements in turn.

**I.**

FEHA states that essential functions are "fundamental job duties" and not "marginal functions" of a position. (§ 12926, subd. (f).) FEHA further provides that "[e]vidence of whether a particular function is essential" includes an employer's judgment as to which functions are essential, written job descriptions, the amount of time spent on a particular function, the consequences of an employee not performing that function, the work experiences of past incumbents in the position, and the current work experience of incumbents in similar jobs, among others. (*Id.* at subd. (f)(2).) The "identification of essential job functions is a 'highly fact-specific inquiry.' " (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971; see also *Hastings v. Dep't of Corr.* (2003) 110 Cal.App.4th 963, 967, fn. 6 (*Hastings*) [essential functions of a job are a question of fact].) Thus, it is usually an issue of fact for a factfinder or jury to decide. (See *Price v. Victor Valley Union High School Dist.* (2022) 85 Cal.App.5th 231, 242.)

The complaint alleges that Saucedo was unable to interact with the public in person or by telephone. The disputed issue is whether the complaint's allegations establish that such interaction was an essential function of her position. The County relies on the two office assistant job descriptions attached to the complaint, which list duties such as receiving

5

and screening phone calls or assisting the public in person or by phone, as well as the complaint's allegation that Saucedo's Program Manager informed her in 2019 that contact with the public was an essential duty.

But the complaint does not allege that the Program Manager's statement was true, and as Saucedo points out, the job descriptions state that all the duties listed are "Illustrative Only" or are examples of responsibilities that an office assistant "may" have to perform. The job descriptions also include a large number of other duties that do not involve contact with the public. Further, Saucedo alleges she had been performing competently in her role from 2015 to 2019 before she was required to interact with the public, and was even promoted once during that timeframe. And her allegation that she was told that she could possibly be transferred to a site where she would not be required to make phone calls could support an inference that this duty was not essential to the office assistant position.

We also note that, while job descriptions and an employer's judgment about which functions are essential are evidence that can be weighed in determining if a duty is essential (§ 12926, subd. (f)(2)(A)–(B)), FEHA is clear that numerous other factors can also be considered. (*Id.*, subd. (f)(2).) As applied here, these factors could include what amount of time office assistants spend on phone or in person interactions with the public, what the consequences would be if an office assistant did not perform that duty, and what the past and present work experiences of office assistants has been in this area. (See § 12926, subd. (f)(2)(C)–(G).)

Quoting *Hastings*, the County argues that "[a]bsent other evidence, [a court] may properly rely on the employer's judgment and the written job description to determine the essential job functions." (*Hastings, supra*, 110 Cal.App.4th at p. 967, fn. 6.) But *Hastings* was a summary judgment

6

case, not a pleadings case, and in any event the job description there does not appear to have contained any ambiguity about whether the relevant functions were essential. (See *id.* at p. 967.) As discussed above, the job descriptions here do not clearly establish that every "illustrative" task should be considered essential for FEHA purposes. Accordingly, we disagree that Saucedo pleaded herself out of her claim by attaching the job descriptions and alleging her Program Manager's statement that contact with the public was an essential duty.

## II.

With respect to discriminatory intent, the County argues, first, that the complaint falls short because FEHA does not prohibit discharging an employee who is unable to perform the job's essential duties even with reasonable accommodations. This argument fails because it depends on the County's previous argument, with which we have disagreed, that the complaint alleges that interacting with the public was an essential function of Saucedo's position.

Second, the County contends that Saucedo's allegation that the Program Manager accused her of " 'faking her symptoms' " is insufficient to plead discriminatory intent because Saucedo does not aver that the Program Manager played any role in her termination. But in a disability discrimination case where an employee sufficiently pleads the ability to safely perform the essential duties of the job, an intent to discriminate can be established by proving that "(1) the employer knew that plaintiff had a physical condition that limited a major life activity, or perceived him to have such a condition, and (2) the plaintiff's actual or perceived physical condition was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action." (*Wallace v. County of*

*Stanislaus* (2016) 245 Cal.App.4th 109, 129.)  Here, there is no dispute that the County was aware of Saucedo's disability, since it had engaged with her at various points in her employment to determine if reasonable accommodations could be provided.  Additionally, Saucedo pleads that the County relieved her of her work as an office assistant because of her inability to interact with the public.  Thus, regardless of whether the Program Manager was involved in Saucedo's termination, Saucedo sufficiently pleads discriminatory intent.  (See *Wallace, supra*, 245 Cal.App.4th at p. 129.)[2]

[2] In light of our conclusion that the trial court erred in sustaining the demurrer, we do not address Saucedo's additional arguments on appeal that the complaint could be construed implicitly to allege a claim for failure to reasonably accommodate a disability, or that she was entitled to leave to amend.  We also decline to reach Saucedo's contention that the County waived its defense of failure to exhaust administrative remedies because she raised it for the first time in her reply brief.  (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)  We also observe that the County did not raise exhaustion in its demurrer or in its brief on appeal.  Saucedo's motion to augment the record on appeal with a right-to-sue letter she received from the California Civil Rights Department in 2023 is denied because the letter was not before the trial court.  (*In re Marriage of Forrest & Eaddy* (2006) 144 Cal.App.4th 1202, 1209.)  There are also no exceptional circumstances that warrant our consideration of the letter as new evidence under section 909 of the Code of Civil Procedure.  The letter is not responsive to any argument the County made in its brief and is not relevant to our resolution of this appeal.

## DISPOSITION

The judgment of dismissal is reversed with directions to the superior court to vacate its order sustaining the demurrer without leave to amend and to enter a new order overruling the demurrer. Saucedo is awarded costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
MOORMAN, J.*

---

*Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.